†BARBARA RUEHLMAN v. ATLANTIC BUILDING ASSOCIATION CO.

1. MEMBER, FULLY INFORMED, BORROWING, UNDER OLD RULE CHANGED BY LAW, ESTOPPED FROM DENYING ITS LEGALITY.

While sec. 3835 Rev. Stat., as amended April 15, 1880, now gives to borrowing members of a building association, other rights, yet where such an association, at a time when the statute did not restrict it, adopted it the plan of, in addition to such rebate of interest, to allow dividends to borrowing members, only on dues paid by them during the fiscal year for which the dividend was declared, and to allow dividends to non-borrowing members on all dues paid by them prior to declaring such dividend; and if at the time a person became a member of the association, he was fully advised of the manner in which dividends were declared, and with full knowledge thereof continuously for eight or nine years continued to receive dividends so declared, and without complaint allowed such association to deal with all of its members on the same plan, and to pay or credit to non-borrowing members, many of whom are not now members thereof, such dividends, such person is now estopped from claiming that such method was contrary to the statute in force, and that he was entitled to dividends on all dues paid by him.

2. PRESENT RULE NOT IN CONFLICT WITH STATUTE.

It seems that since the amendment to this section, passed May 8, 1886, the manner of declaring dividends adopted by the defendant company, herein mentioned, is not in conflict with the provisions of such section as so amended.

Appeal from the Court of Common Pleas of Hamilton county.

SMITH, J.

The question in this case is, whether under the laws of the state the constitution and by-laws of the defendant company, and the contract made by the parties, the plaintiff, a member of such association, who some years ago obtained therefrom an advance loan of the full value of her stock therein, and who up to a certain period, viz.: January 28, 1889, duly and regularly paid her weekly dues, premiums and interest on such loan according to the contract, and where at the end of each fiscal year the amount of dues paid by her during such year was applied to the reduction *pro tanto* of the principal of the debt, thus making a new principal on which interest was collected for the ensuing year, is also entitled at each semi-annual period to a dividend from the earnings of the association on the total amount of dues paid by such member from the time she became such. If she was, and has not in some way waived her right thereto, it is conceded that she has not received or been credited with a sufficient sum, and is entitled to have the account restated, and to be credited with the right amount. If she is not entitled to a dividend on the plan claimed by her, and that adopted by the association was right, she is not entitled to the account, or the cancellation of the mortgage as fully paid, for in that event it is conceded that there is a large sum due to the association from her.

The facts in the case, as they appear from the pleadings and evidence, and which are practically agreed to, are substantially these:

First—On May 2, 1881, the plaintiff became a member of the defendant company, (which was organized before 1880), by subscribing for nine shares of its stock, of $500 each. On May 23, 1881, in accordance with the constitution and rules of the association, she obtained the privilege and preference of withdrawing her said shares by paying a small premium therefor, payable weekly, and giving to the association the mortgage hereinafter mentioned, and did then receive from the association the full amount of such shares, viz., $4,500. Article 2 of the constitution provides that all members shall pay for every share $1 initiation fee, and $1 per share weekly dues, and sec. 4 of art. 12, "that interest shall be paid on the money withdrawn at the rate of 6 per cent. per annum, in weekly installments." Any dues paid in by such members at the time of drawing his shares shall

†This case in the supreme court was dismissed for failure to file a printed record, October 4, 1892.

reduce the amount on which he shall be required to pay interest—likewise all dues paid in thereafter by such member shall yearly reduce the amount on which interest is chargeable to such member. Whenever his dues and dividends, together with his proportionate share of the contingent fund, equals the amount he has received from the association, his indebtedness to the association shall be considered paid and cancelled." Section 10 of art. 12, provides as follows: "Members may pay dues in advance, but such advance dues shall not participate in the profits. The secretary shall at the end of every six months calculate the amount of the net profits realized by the association. Of this amount ten per cent. shall be placed to the credit of a contingent fund, which shall be used to pay any losses which the association may meet in the regular transaction of its business. The balance of the said profits shall be placed to the credit of each member, or paid to him in cash if desired, and the secretary in calculating each member's proportionate share of said profits, shall take into account the date of each shareholder's membership, but no member shall be entitled to dues paid in advance of the time required."

On June 16, 1881, the plaintiff with her husband executed a mortgage on the real estate in the petition described, to secure such advance loan and the liability which under the constitution she thereby assumed, the condition of which, so far as it is necessary to recite it, was as follows, viz.: "Now, if the said Barbara Ruehlman, will pay said association the weekly sums of $9 dues, and 6 per cent. interest upon $4,500 in weekly installments, and the sum of two cents per share per week as premiums, which said sum said Barbara Ruehlman has agreed to pay for the preference of drawing said money." * * * "It is also agreed that the said Barbara Ruehlman shall continue to make all the above named payments until the amount paid in dues, together with the undrawn dividends accruing on said shares of stock, shall amount to the sum of $500 per share over and above any deduction that may have been made from the paid in dues on the accrued dividends by reason of any losses."

On the stock so withdrawn by her, or the advance loan made, the plaintiff duly and regularly paid her weekly dues, premium and interest, up to January 28, 1889, and was credited on her pass book therewith and with the dividends credited to her, according to the plan so in use by the association.

Second—Ever since the organization of the association, its practice as to the declaring and apportioning dividends to the members has been this: Under sec. 10 of art. 12, the secretary at the end of every six months, calculated the amount of the net profits realized by the association. Of this amount ten per cent. was placed to the credit of a contingent fund, which was to be used to pay any losses which the association might meet with in the regular transaction of its business. The balance of the said profits was then placed to the credit of the several members, or paid to them in cash if desired. The share of the dividend to be credited to each member was determined in this way. The secretary would ascertain the total amount of the dues paid to the association by the non-borrowing members, from the commencement of their membership. To this would be added (if it was the dividend in the middle of the fiscal year) the total amount of dues paid by the borrowing members during the preceding six months, and if it was the dividend at the end of the fiscal year, the total amount of dues paid by borrowing members during the fiscal year would be added to the total amount of dues paid by non-borrowing members during their membership. This would fix the sum on which the dividend would be declared, and having found the per cent. of dividend to be declared, it would be apportioned to each member in proportion to the dues by him so paid as aforesaid. At the end of the fiscal year, in conformity with sec. 4, art. 12, all dues paid during such year by borrowing members were so applied as to reduce the amount on which interest was chargeable to such member.

This plan has been pursued from the organization of the association, until this time, and until the claim was made by the plaintiff shortly before the bringing of this suit, January 26, 1889, without objection from anyone, and dividends were paid or credited as desired to all borrowing and non-borrowing members, and if the mode pursued has not been in accordance with the law, or the constitution of the association, and the accounts must be restated, it will seriously affect all persons who have been at any time members of the association, and who have received dividends so declared, and may result in great loss to the association, where such dividends have been paid.

Third—Evidence was offered at the trial of the case as to what occurred between the secretary of the association, and Mrs. Ruehlman, the agent of the plaintiff, as to the terms on which Mrs. Ruehlman could probably obtain a loan upon her stock, and as to the manner in which borrowing and non-borrowing members would receive dividends, being the manner hereinbefore stated, and that an announcement of the same character was made by an officer of the society in the presence of the person who was then acting as agent of the plaintiff in procuring her loan, and at the time when it was awarded to her. This evidence was received subject to the objection of the plaintiff, the question of its competency to be thereafter determined by the court. In so far as it tends to alter or modify in any way or add terms to the written contract thereafter entered into between the parties, we hold that it is not competent and cannot be received or considered, and that the contract as made, construed in the light of the constitution and laws of the asso-

ciation, and not contrary to the laws of the state, must govern the parties, unless something has been done which estops the plaintiff from having it carried out as written.

Fourth—We further find from the evidence that the plaintiff through her agent during all the time that she was a member of the association had full knowledge of the mode and manner in which the dividends were declared and credited every six months, and that she and other borrowing members only received ·dividends on the dues paid by them respectively for the six months or twelve months, (as the case might be), preceding the dividend, and that non-borrowing members were receiving or being credited with dividends based on the total amount of dues paid by them respectively. That neither she, or any other member of such association objected thereto for several years, and probably not until about ˙January, 1889; that she permitted such association to declare such dividends in such manner and on such a basis, and to pay or credit the same to members, as desired by them, without any objection thereto. Also, that the officers of such associations made semi-annual reports to the members of the condition of its affairs, showing the amount of profits for dividends, and from which could be ascertained the manner in which they were declared. And this was fully known by the agent of the plaintiff, who, during all this time, was entrusted with the duty of paying the dues, interest, etc., of the plaintiff, and of having the proper entries made upon her pass-book, in which the whole account of the plaintiff with the association was regularly entered, and which showed the weekly dues and interest paid by her, and the dividends credited to her.

The first question which arises on this state of fact is, whether the constitution of the association or the laws of the state authorize the corporation to adopt and carry out the plan as to dividends, which has been in force—for we see nothing in the mortgage which was given which provides specially as to the mode and manner in which they are to be apportioned among the members. Nor do we think that the plan adopted was in violation of any such section of the constitution. Section 10 of art. 12, in effect only provides that after setting aside 10 per cent. of the profits for the contingent fund, the balance thereof shall be placed to the credit of the members, according to the proportionate share of each member; and, in our opinion, if the plan adopted is not in contravention of the laws of the state, it would be a substantial compliance with the provisions of the constitution, and should be upheld. There is great force in the claim made by counsel for the defendant, that the rule is an equitable and just one; that thereby borrowing and non-borrowing members are put substantially on an equal footing, the reduction in the rate of interest, by the application each year of the amount paid as dues by the borrower during the preceding year, being in effect a payment of a dividend of so much to the borrowing member. But, on the other hand, it is claimed that as those withdrawing money on their shares pay a premium for the privilege and interest on the loan, and pay dues, that like the non-borrowing members they should have dividends on the amount of all dues paid, for this fixes their interest in the association.

But, however this may be, it must be conceded that the legislature has the right to fix the mode in which the dividends declared shall be appointed among the members, and if it has done so, while such law is in force, the corporation cannot legally adopt a different rule. Has this been done?

This association seems to have been organized prior to 1880, and the constitution, as it now stands, was formed under the law as it then stood in the revision of 1880, and sec. 3835, of which made provision as to dividends, authorizing 10 per cent. of the annual profits to be set aside to defray current expenses and the purchase of necessary real estate, and directing the residue of the earnings to be transferred to the credit of the shareholders, to be paid ratably to them when the shares were fully paid. The statute, as it then stood, contained no provision that the dues paid by borrowing members should yearly reduce the amount on which interest was chargeable to such member, nor one like that introduced by the amendment to sec. 3835, of April, 1880, that the association "at the end of each year, shall make a rebate of interest on the amount of dues paid on loans awarded." But before this amendment this association, by its constitution, had provided that the dues paid by borrowing members should yearly reduce the amount on which interest is chargeable to such member. It seems to us that these. two provisions have substantially the same effect, and as the loan of the

plaintiff in this case was made under sec. 3835, as amended, its provisions would apply to such loan and govern plaintiff's rights as a borrowing member.

We understand the supreme court to have decided, in Seible v. Bldg. Ass'n., 43 O. S., 371, that under this section borrowing members are not only entitled to this rebate of interest, or reduction of the amount of the interest-bearing loan (which we think are substantially the same), but also to a dividend on the total amount of dues paid by them—and by this decision we must be bound.

2nd.   But, conceding that the plaintiff would have been entitled to have the dividends declared and applied in the manner claimed by her, is she now entitled to the relief prayed for?   That is, to have all the accounts of all those who have been members of the association during all of this time (many of whom doubtless have drawn their dividends in cash, and many of whom are no longer members of the association, but have been settled with on the plan adopted) recast and re-stated, and that she, from some source, shall receive from the association, in cash, or by credit on her loan, the amount which she would have been entitled to over and above what she has received credit for, and which she claims is sufficient to cancel her loan and mortgage?   We have found that she has knowingly permit-ted the association to act on this plan so adopted for several years without any complaint whatever.   Her agent was fully notified of this plan of operation before she became a member for these nine shares, and before she bid for such loan. Her account with the association, showing her weekly payments of dues and interest, and the credits to her, on account of dividends, were kept in her own pass-books, open to her inspection at any time, and, as a rule, remained in the custody of her agent, who for her paid the dues and interest, and which pass-books were on several occasions in the hands of her husband (admitted to have been her general agent for this business), and for several years, at least, not a word of complaint was made as to the manner in which the business was trans-acted, but, on the contrary, the association was permitted, without objection, to pursue a course, and make settlements with its withdrawing and other members, which if now upset or held to be in violation of law, will involve it in great loss. We do not think it equitable or right that this should be done under the circum-stances found to exist.   The plaintiff, by her conduct, is estopped from making such a claim.

Whether the amendment to the section under consideration (3835), made May 8, 1886, 83 O. L., 116, warranted associations of this kind, by their constitu-tions and by-laws, to provide for the making of dividends to all of the stock-holders, borrowing and non-borrowing, in the mode which has been in use in this association, is a question as to which there may be doubt—but we do not deem it necessary in this case to decide as to this.   It does provide that "the residue of such earnings or dividends shall be transferred to the credit of all members, to be paid to them at such times, and in such manner, and in such proportions, as the corporation, by its constitution and by-laws, in conformity with this act, may pro-vide.   This would seem to warrant the mode of distribution of the residue of such earnings, as is now and has been provided for by the constitution and by-laws of this corporation.   But, on the other grounds stated, the decree will be in favor of the defendant.

Messrs. Merrill & Kuehnert, for plaintiff in error.

Judge W. R. Avery and C. M. Lotze, for defendant in error.